## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**WILLIAM F. T. LINCOLN,**

      **Plaintiff,**

**vs.**                               **Case No. 4:13cv74-MW/CAS**

**FLORIDA GAS TRANSMISSION CO.,**
**et al.,**

      **Defendants.**

_____/


## SECOND REPORT AND RECOMMENDATION

Pending in this case is a motion to dismiss for failure to state a claim, doc. 43, filed by U.S. Pipeline, Inc. [hereinafter USPI], and a motion to dismiss for failure to state a claim, doc. 44, by Florida Gas Transmission Company, LLC [hereinafter "Florida Gas"], and Southern Union Company [hereinafter "Southern"].[1]  The pro se Plaintiff was advised of his obligation to respond to the motions, doc. 45, and Plaintiff filed timely responses.  Docs. 46 and 47.

---

[1] All other Defendants have been dismissed from this action.  *See* docs. 32, 39, 54-56.

I.    **Allegations of the Third Amended Complaint, doc. 36**[2]

The operative pleading is Plaintiff's third amended complaint which, in general,

brings challenges to a natural gas pipeline which borders Plaintiff's property.  Doc. 36.

Plaintiff alleges that the original pipeline was "built in the early 1970's" and a new

"Phase VIII expansion was placed into service on April 1, 2011 . . . ."  *Id.* at 2, 5.

Defendant Florida Gas is alleged to be the owner and operator "of the new Phase VIII

Loop 5 pipeline and the old pipeline cited herein."  *Id.* at 7.  Defendant Southern is

alleged to be "co-operators" and owners with Florida Gas.  *Id.* at 10.  Plaintiff alleged

that Defendant USPI "constructed the Phase VIII Loop 5 pipeline as a contractor for

Defendants."  *Id.*

Plaintiff alleged Defendant USPI "knew they were building the pipeline in a

hazardous area that was unsafe and a violation of pipeline safety law pursuant to Fla.

PSC 25-12 and Title 49 section 192.614 which requires damage prevention by avoiding

excavation '. . . and other earthmoving operations', but went ahead and built it anyways

recklessly and negligently putting lives at risk."  Doc. 36 at 10.  Plaintiff has contended

that on March 6, 2008, Florida Gas "filed a pre-filing Request with the Federal Energy

Regulatory Commission pertaining to a proposed second parallel expansion pipeline,

which Pre-filling request was approved by FERC on March 18, 2008."  *Id.* at 12.  Plaintiff

alleged that when Defendants Florida Gas and Southern learned that certain

landowners had been solicited by attorneys to negotiate land and easement "sales

which threatened delays and added costs," the Defendants diverted the pipeline siting

---

[2] Jurisdiction is premised on this Court's diversity jurisdiction, 28 U.S.C. § 1332,
doc. 36 at 3, but Plaintiff also contends Defendants violated federal law.  *Id.*

path.  *Id.* at 12-13.  Those Defendants allegedly sought approval for an expansion

pipeline rather than a new pipeline certificate, using fraudulently drawn maps which

demonstrated falsely that the existing pipeline crossed the Norfleet Mine area.[3]  Doc. 36

at 14-15.

On October 31, 2008, Stephen Veatch, on behalf of Florida Gas, filed an

application with the Federal Energy Regulatory Commission [hereinafter FERC] for the

Phase VIII Expansion Project.  *Id.* at 15-16.  Included in the application were falsified

maps which show "the existing pipeline coursing across the Roberts Sand Company's

Norfleet Mine instead of showing its true pathway along Big Richard Rd."  *Id.* at 16-17.

Plaintiff claimed that Defendants Florida Gas and Southern Union abrogated their

pipeline safety duties by the submission of the false maps.  *Id.* at 16.  Plaintiff alleged

that those Defendants also tainted the Environmental Impact Statement and "knowingly

lied to FERC staffers."  *Id.*  A certificate of approval was granted by FERC on November

19, 2009.[4]  *Id.*

Plaintiff alleges that the expansion pipeline "negligently crosses the active

Norfleet Mine for over 1500 feet," contrary to the falsified application documents which

---

[3] Plaintiff alleges the Norfleet Mine area is operated by Roberts Sand and Gravel
Company and "borders the rear of Plaintiff's property, sharing Plaintiff's property fence
line."  Doc. 36 at 15.  Plaintiff further claims that this is an active registered mine, and "a
dangerous and hazardous location," and it violates state and federal law "to site a new
high pressure transmission pipeline across or very near to an active mining [o]peration -
especially a digging type of surface mine like the Norfleet Mine . . . ."  *Id.* at 14-15.

[4] Plaintiff does not allege in the third amended complaint when construction
began on the Phase VIII Expansion project, but it was presumably after the certificate
was approved.  A claim for negligence under state law must be brought within four
years, *see* FLA. STAT. § 95.11(3)(a), and because this case was initiated on February
20, 2013, a claim for negligence which occurred after February 2009 is timely.

show the mine "530 ft[.] from the proposed pipeline!"  *Id.* at 17.  Plaintiff specifically

claims that Defendant Florida Gas provided "misleading drawings, deceptive documents

and data to the Environmental Project Team at FERC . . . deceptively stating that no

active mines were nearby and omitting the required reporting of the fact that an active

mine was being crossed by the Phase VIII Expansion Pipeline."  *Id.* at 17-18.  Plaintiff

contends the pipeline was built contrary to state and federal pipeline safety regulations

"and imposes a mortal danger and stressor to Plaintiff and area residents."  *Id.* at 18.

Plaintiff further alleges that Southern had a "duty to see that their property's

actions cause no harm or damage to the Public, but negligently abrogated that duty to

Plaintiff."  *Id.* at 21.  Plaintiff seeks to hold Southern liable under a theory of "owner

liability for the actions of their property."  *Id.*

USPI is alleged to have built the expansion pipeline and ignored Plaintiff's

warnings to site managers "that they were entering a hazardous dangerous location, but

they ignored Plaintiff 'telling him to beat it' and began pipeline construction anyway,

negligently building the pipeline contrary" to state and federal law.  *Id.* at 21.

Plaintiff also contends that Florida Gas has not brought the original pipeline "up

to the new standards" as required by 49 C.F.R. § 192.14.  *Id.* at 23.  Florida Gas has

allegedly not designated certain property as a "High Consequence Area" which deprives

"residents[5] of the safety and duty due them."  *Id.*  Defendants operate the pipeline under

Big Richard Road over which "garbage trucks and loaded tractor trailers with 30 tones

and more of weight [r]outinely pass up and down the soft sand road."  *Id.* at 23.

---

[5] It appears that the residents are located in the Ponderosa subdivision.  Doc. 36
at 25.

"[M]assive mature pine trees are rooted over and within 10 feet of the pipeline."  *Id.* at

24.  Plaintiff contends that "[d]eeply rooted vegetation over a live transmission pipeline

violates" 42 C.F.R. § 192.317.  *Id.*  In addition, Plaintiff contends that a nearby culvert

and water pipeline violates the clearances required by 49 C.F.R. § 192.325 and Florida

Gas workers "buried a large tractor in the sand on top of the old pipeline . . . ."  *Id.*

Florida Gas has "negligently failed their duty under the law to inspect the 40 plus year

old 30 [inch] corroded existing natural gas transmission pipeline, keep records and

honestly report the facts . . . ."  Doc. 36 at 25.

Count One of the third amended complaint asserts a state law claim for the

Intentional Infliction of Severe Emotional Distress against Florida Gas.  Doc. 36 at 26.

Plaintiff claims that the Defendant knew Plaintiff would see "the mining operations going

on near and at times directly over the live natural gas high pressure transmission

pipeline and that such life endangering acts would terrorize Plaintiff and inflict severe

emotional stress on Plaintiff and the residents nearby . . . ."  *Id.* at 27.  Defendant

Florida Gas knowingly and recklessly inflicted "severe emotional distress upon Plaintiff

damaging him in his mental and physical health and rendering his property worthless - a

danger to human occupation."  *Id.*  Plaintiff further claims Florida Gas knew that by

failing to operate the pipeline in a safe manner, "they would intentionally, callously and

recklessly inflict severe emotional distress upon Plaintiff and the residents but went

ahead anyways to pocket the unlawful gains of their illegal behavior."  *Id.*

Count Two of the third amended complaint asserts a state law claim for

negligence against Florida Gas, Southern, and USPI.  Doc. 36 at 28.  Plaintiff alleges

"Defendants have a legal duty to obey pipeline safety laws requiring the avoidance of hazards that could lead to an explosion" and contends that "Defendants negligently failed to obey the pipeline safety laws . . . . *Id.* at 29.  Plaintiff claims Defendants have "created a foreseeable 'Horror Zone of Death Risk' that poses a high threat of harm to others, and by doing all of the above have been egregiously negligent intentionally and recklessly inflicted severe emotional stress, mental, physical and property damages upon Plaintiff."  *Id.*  "Mining operations over a live high pressure gas transmission pipeline presents gross negligence of the first order."  *Id.* at 30.  Plaintiff contends that Defendants' negligence "has directly and proximately caused damages to Plaintiff" and he claims he "has been damaged in his person and his property and he is entitled to money damages."  *Id.*

## II.    Standard of Review

The issue on whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009), *quoting* Twombly, 550 U.S. at 570, 127 S.Ct. 1955.[6]  "A claim has facial plausibility when the plaintiff pleads factual content that

---

[6] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert.*

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949, *citing* Twombly, 550 at 556; *see also* Speaker v. U.S. Dept. of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 556. A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 557.

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* Twombly, 127 S.Ct. at 1966. A complaint does not need detailed

---

*denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S.Ct. at 1964-65.

## III.     USPI's Motion to Dismiss, doc. 43

Defendant USPI moves to dismiss the negligence claim asserted against it on the basis that Plaintiff's negligence claim is founded upon facts relevant to the original pipeline, constructed in the 1970's.  Doc. 43 at 2.  Because the facts brought against USPI only concern involvement in the construction of the expansion pipeline between 2008 and 2011, the Defendant contends that the complaint fails to state a claim against USPI.  *Id.*  Furthermore, Defendant argues that Plaintiff's "claims are all centrally premised upon the allegation that the two pipelines are near his property."  *Id.*  USPI points out that Plaintiff does not allege "any pipeline leak, rupture, or explosion, nor has he alleged any tangible damage to his person or property."  *Id.*  Rather, USPI suggests that Plaintiff's claims are based on "the mere possibility that he may suffer actual damage at some point in the future as a result of the location of the two pipelines."  *Id.* at 2-3.  Thus, Defendant argues the claim is insufficient because Plaintiff does not allege causation or injury beyond having property located in close proximity to the Phase VIII pipeline.  *Id.* at 10-11.  USPI maintains that Plaintiff's allegations fail "to allege anything beyond the fact that [USPI] built the Phase VIII line in the location that was approved and mandated by the Federal Energy Regulatory Commission."  *Id.* at 3.  USPI also seeks dismissal of the negligence claim on the basis of the *Spearin* doctrine[7]

---

[7] The doctrine comes from United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918).

which holds "that a contractor should not be held liable if he constructs a project in accordance with a design prepared by others if the design renders the project defective or dangerous." *Id.* at 4-5.  Furthermore, USPI asserts that to the degree Plaintiff's complaint alleges negligence for violations of cited law, the complaint is insufficient because those statutes or regulations are not applicable to USPI.  *Id.* at 12-14.  Finally, to the degree Plaintiff's complaint also should be construed as raising a claim for inflicting severe emotional stress, USPI seeks dismissal pursuant to Florida's impact rule.  *Id.* at 14-15.

## IV.   Plaintiff's Response, doc. 46

In response, Plaintiff asserts that USPI "signed a contract with Florida Gas Transmission Co. LLC that stated that the contractor must comply with all applicable codes, standards and law bearing upon pipeline construction and safety."  Doc. 46 at 2.  Thus, Plaintiff contends that USPI "violated their contractual obligations to Defendant Florida Gas" and also violated a duty to Plaintiff and others by violating 49 C.F.R. § 192.614 and FLA. ADMIN. CODE R. 25-12.009.[8]  *Id.*  Plaintiff further argues that the *Spearin* doctrine is a very narrow doctrine and does not shield USPI from claims by either the Government or private citizens.  *Id.* at 3.  Plaintiff also contends that Florida's impact rule does not apply to his claim of Intentional Infliction of Severe Emotional Distress, but only to a charge of negligence infliction of emotional distress.  *Id.* at 4.

## V.   Analysis of USPI's Motion to Dismiss

---

[8] USPI notes that Plaintiff cited only to Fla. PSC 25-12, and not a specific rule by proper citation such that it could be located.  Doc. 43 at 12, n.7; *see* doc. 36 at 10.  It is believed that Plaintiff's reference to PSC 25-12.009 in paragraphs 9 and 39 are to FLA. ADMIN. CODE R. 25-12.009.  Doc. 43 at 12, n.7.

Defendant USPI first argues that the *Spearin* doctrine precludes a claim against a contractor who "constructs a project in accordance with a design prepared by others if the design renders the project defective or dangerous."  Doc. 43 at 5.  Here, there are no allegations that USPI had any role in the location of the Phase VIII pipeline or in the approval process with FERC.  USPI points out that "Plaintiff's claims are based solely upon the proximity of the Phase VIII line to Plaintiff's property" and the location of the pipeline over an alleged mine, in "a sand pit area," and with hazards.  *Id*.; *see also* doc. 46 at 4, 7-9.  Plaintiff, on the other hand, contends USPI misapplies the doctrine and that it was still required to obey pipeline safety laws and regulations.  Doc. 46 at 7-9.  Plaintiff contends that the doctrine is applicable to "design specifications," but it is not applicable to "performance specifications."  *Id.* at 7-8.

The *Spearin*[9] doctrine is generally premised on contractual obligations.  <u>Fabi Const. Co., Inc. v. Secretary of Labor</u>, 508 F.3d 1077, 1085 (D.C. Cir. 2007) (holding that *Spearin* did not apply and finding that "Petitioners knew or should have known that

---

[9] The facts of <u>Spearin</u>, as succinctly explained in <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d 1338, 1345 (Fed. Cir. 2008), are:

> Spearin was a construction contractor, who entered into a fixed price contract with the government to build a dry dock according to plans and specifications prepared by the government.  *Spearin*, 248 U.S. at 133, 39 S.Ct. 59.  The plans contained a provision requiring relocation of a section of sewer.  *Id.* at 133–34, 39 S.Ct. 59.  After relocation of the sewer, a storm caused build up in internal pressure in the relocated sewer section and flooding of the dry dock excavation site.  *Id.* at 134, 39 S.Ct. 59.  The Court held that the provision requiring relocation of the sewer created an implied warranty by the government that if the specifications were complied with, the sewer would be adequate.  *Id.* at 137, 39 S.Ct. 59.  Because the sewer was inadequate, the Court held that the government had breached its implied warranty.  *Id.* at 138, 39 S.Ct. 59.

521 F.3d at 1345.

the drawings upon which they relied created a serious hazard for their employees.").  It is not clear that the *Spearin* doctrine may be used in this case to provide compensation to Plaintiff who is not a party in any contract with any Defendant.  *See* Rick's Mushroom Serv., Inc., 521 F.3d at 1345 (finding that under Hercules, Inc. v. United States,[10] 516 U.S. 417, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996), one "could not recover on an implied warranty under *Spearin* because such a warranty does not extend as far as third-party claims.").  Because Plaintiff is a third-party, not in a contractual relationship with USPI, and the contract is not before this Court, there is no need to enter the quagmire of the *Spearin* doctrine in a unique case[11] when Plaintiff's claim of negligence is insufficient for another reason.

### A.    Negligence Claim

USPI argues that Plaintiff's negligence claim is insufficient because Plaintiff cannot demonstrate "the 'but for,' cause-in-fact, element of Plaintiff's negligence claim . . . ."  Doc. 43 at 11.  USPI contends that Plaintiff's alleged "injuries stem from the location of the Phase VIII line" and USPI's "act or properly constructing the Phase VIII line in the

---

[10] "Hercules was a chemical manufacturer who manufactured Agent Orange for the government and sought to recover from the government costs incurred in defending and settling lawsuits brought by Vietnam veterans alleging health problems caused by exposure to Agent Orange."  Rick's Mushroom Serv., 521 F.3d at 1345, explaining facts of Hercules.

[11] This case is deemed unique because USPI readily admits that it "cannot locate a *Spearin*-like case directly on point with respect to the location of a pipeline or something similar," but argues that the logic and rationale of the *Spearin* doctrine should equally apply "to a contractor that installs a pipeline in a location that has been selected by others and approved and mandated by a regulatory agency such as the Federal Energy Regulatory Commission . . . ."  Doc. 43 at 9.  There is no need to extend the logic of *Spearin* to a case which is devoid of an underlying negligence claim.

location specified, approved, and mandated by others was not, as a matter of law, the cause-in-fact of Plaintiff's injury, even when assuming Plaintiff's factual allegations are true." *Id.*

In response to the motion to dismiss, Plaintiff stated that he "is not arguing that [USPI] did not build a technically sound pipeline product - the Complaint is that [USPI] ignored the digging machines and Monster equipment of the Norfleet mine, within feet of their construction crews, violating State and Federal pipeline anti-hazard laws, damaging Plaintiff in his person and his property." Doc. 46 at 9.  Plaintiff also points to his allegations in the complaint that the negligence claim "lies in the fact that loop 5 of the phase VIII pipeline was built and is now operating a few feet under operating mining equipment and earthmoving activities, a horrible situation, threatening Plaintiff's life." *Id.* at 10, *citing* doc. 36, at 2, ¶6.  Generally, Plaintiff contends that USPI "failed in their duty to [P]laintiff when they [v]iolated pipeline safety law by building the pipeline across an active mine adjacent to Plaintiff's home . . . ." Doc. 46 at 13.  Plaintiff argues that USPI's conduct in constructing "the pipeline contrary to law" caused damage to Plaintiff (inhuman stress) and damage to his property (property now "worthless").[12]  *Id.*

"A claim for negligence requires four elements: (1) the existence of a duty to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a breach of that duty; (3) a 'reasonably close causal connection' between the breach and the resulting injury; and (4) actual harm.  Langbehn v. Public

---

[12] The third amended complaint alleged: "Defendants have a legal duty to obey pipeline safety laws requiring the avoidance of hazards that could lead to an explosion" and claimed that "Defendants negligently failed to obey the pipeline safety laws . . . . " Doc. 36 at 29.

Health Trust, 661 F.Supp.2d 1326, 1335 (S.D. Fla. 2009), *citing* Williams v. Davis, 974

So.2d 1052, 1056 (Fla. 2007).  Plaintiff pointed to one state administrative rule and one

federal rule which he contends set forth a duty that USPI negligently breached.

First, Plaintiff alleged that USPI was negligent in failing to comply with FLA.

ADMIN. CODE R. 25-12.009.  Doc. 36 at 10.  However, that provision is not applicable to

USPI, a pipeline contractor.  *See* doc. 36 at 7, 10.  The Rule provides:

> (1) Each operator shall establish a continuing education program so as to enable
> its customers and the public to recognize a gas pipeline emergency for the
> purpose of reporting it to the operator.
>
> (2) Each operator shall exercise due care to reduce the hazards to which
> employees, customers and the public may be subjected to by reason of its
> equipment and facilities.

FLA. ADMIN. CODE R. 25-12.009.  The Rules define "operator" as:

> Except where a different meaning clearly appears from the context, the word
> "Utility" or "Operator" shall be every person, corporation, partnership, association,
> public agency, municipality, cooperative gas district or other legal entity and their
> lessees, trustees, or receivers, now or hereafter *owning, operating, managing or
> controlling any gas transmission or distribution facility transporting gas* as defined
> herein and not specifically exempt from state jurisdiction by the Pipeline
> Inspection, Protection, Enforcement, and Safety Act of 2006 (PIPES Act), Pub. L.
> 109-468 (codified as amended at 49 U.S.C. §60101 (2006)).

FLA. ADMIN. CODE R. 25-12.004(2) (2009) (emphasis added).  USPI is not alleged to be

an "operator" of the pipeline as defined by the Florida Administrative Code and, thus,

the Rule is not applicable to USPI.

Second, Plaintiff's third amended complaint alleged that USPI violated federal

law, specifically identified by Plaintiff as 49 C.F.R. § 192.614.  Doc. 36 at 10.  Again, the

Rule's first provision requires an "operator of a buried pipeline" to carry out "a written

program to prevent damage to that pipeline from excavation activities."  49 C.F.R.

§ 192.614(a).  Because it only applies to "operators," it is inapplicable to USPI.  *See*

doc. 43 at 13.  The second provision, § 192.614(b), directs an "operator" to participate

in "a public service program," 49 C.F.R. § 192.614(b), and the remainder of the

regulation's provisions address the requirements of the programs.  "Operator" is defined

as "a person who engages in the transportation of gas."  49 C.F.R. § 192.3.  Because

USPI is not an "operator," this regulation is also inapplicable.

Plaintiff's third amended complaint does not allege that USPI negligently failed to

comply with any state or federal rule or law applicable to a contractor.  Rather, it

appears that Plaintiff's claim for negligence against USPI is based on the location of the

pipeline and its alleged proximity to hazards, not for its work in constructing the pipeline

expansion.  *See* doc. 43 at 7.  Plaintiff alleged that USPI built "a pipeline through a

FERC approved siting pathway, but that pathway would not meet the PSC & PHMSA

hazard avoidance standards."  Doc. 36 at 21.  There are no allegations that USPI had

any responsibility for, or involvement in, selecting the location in which the pipeline

expansion was built.  The citing pathway was approved by FERC based upon the

application submitted by Florida Gas.  Thus, the third amended complaint fails to state a

claim for negligence against USPI and the motion to dismiss, doc. 43, should be

granted as to this claim.

### B.    Emotional Distress Claim

Plaintiff alleged a claim for negligence against USPI, Florida Gas and Southern in

count two.  Doc. 36 at 28.  Although count one clearly asserts a distinct claim for the

*intentional* infliction of severe emotional distress against Florida Gas and former

Defendant Robert Bond,[13] Plaintiff did not assert such a claim against USPI.  *See* doc.

36 at 36.  However, buried within the statement of facts provided in support of the

*negligence* claim, Plaintiff claimed that Defendant's conduct was "egregiously negligent

intentionally and recklessly inflicted severe emotional stress . . . upon Plaintiff."  Doc. 36

at 29.  That assertion is not a model of clarity.  Had Plaintiff intended to present a claim

against USPI for the intentional infliction of emotional distress, his third amended

complaint reveals he knew how to do so if that were his intent, just as he did in count

one.  *See* doc. 36 at 26.

        Notwithstanding, in his response to USPI's motion to dismiss, Plaintiff indicates

that he intended to assert a claim against USPI for the intentional infliction of severe

emotional distress.  Doc. 46 at 14.  Plaintiff contents that "[i]ntentional torts are not

subject to the impact rule in Florida."  Doc. 46 at 14.  Plaintiff points out that "[i]f the

tortuous action is reckless enough it is considered intentional."  *Id.*, *citing* Eastern

Airlines v. King, 557 So.2d 574 (Fla. 1990), and Rowell v. Holt, 850 So.2d 474, 478, n.1

(Fla. 2003).  Plaintiff contends that USPI's conduct is "outrageous" and "abhorrent in a

civilized society."  Doc. 46 at 14.  In an abundance of caution, both versions of this claim

(negligent infliction and intentional infliction) will be addressed.

        "The impact rule has had a long legal history in this state, beginning with this

Court's decision in International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 So.

148 (1893)."  R.J. v. Humana of Florida, Inc., 652 So.2d 360, 362 (Fla. 1995).  "[T]he

impact rule requires that 'before a plaintiff can recover damages for emotional distress

_____

        [13] Plaintiff voluntarily dismissed his claim against Defendant Bond.  Docs. 50, 54.

caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.' " R.J., 652 So.2d at 362, *quoting* Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992), *review denied*, 623 So.2d 494 (Fla. 1993); *see also* Fla. Dep't of Corr. v. Abril, 969 So.2d 201, 206 (Fla. 2007) (quoting R.J., 652 So.2d at 362).[14]  "The rule actually requires some impact on the plaintiff or, in certain situations, the manifestation of severe emotional distress such as physical injuries or illness." Abril, 969 So.2d at 206 (citations omitted).  Here, Plaintiff's third amended complaint does not present any allegations of physical impact, nor has Plaintiff specified any "severe emotional distress."  Thus, a claim for the negligent infliction of emotional distress is barred by Florida's physical impact rule.  Furthermore, Plaintiff has not supported a claim for any underlying negligence against USPI.  Thus, the motion to dismiss, doc. 43, should be granted as to this claim against USPI.

To the degree Plaintiff contends his third amended complaint has also stated a claim for the intentional infliction of emotional distress, that claim is also due to be dismissed.  "The essential elements of a claim for intentional infliction of emotional distress are: 1) extreme and outrageous conduct; 2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; 3) severe emotional distress

---

[14]  "The reasoning behind the impact rule has generally been that emotional harm may be difficult to prove, damages are not easily defined, and the cause of such an injury can be elusive." Elliott v. Elliott, 58 So.3d 878, 881 (Fla. 1st DCA 2011), *citing* Rowell v. Holt, 850 So.2d 474, 478 (Fla. 2003).  " '[T]he underlying basis for the [impact] rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims.' " Gracey v. Eaker, 837 So.2d 348, 355 (Fla. 2002), *quoted in* Elliott, 58 So.3d at 881.

suffered by the plaintiff; and 4) proof that the conduct caused the severe emotional distress."  R.W. v. Armor Corr. Health Servs., Inc., 830 F.Supp.2d 1295, 1304 (M.D. Fla., 2011), *quoting* Gonzalez–Jimenez de Ruiz v. United States, 231 F.Supp.2d 1187, 1199 (M.D. Fla. 2002).  Plaintiff's claim that USPI constructed a pipeline in a path and location approved by the FERC, and constructed it in such a way that Plaintiff acknowledges is technically sound, cannot be said to be an intentional infliction of emotional distress.  The construction of a pipeline which is not alleged to be defective in its construction is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  Echeverria v. BAC Home Loans Servicing, LP, 523 F.App'x 675, 677 (11th Cir. 2013).  Plaintiff may well be concerned about living so near a pipeline, but Plaintiff has not shown that USPI committed any extreme or outrageous act, or that it did so with an intent to cause Plaintiff emotional distress, nor has Plaintiff provided allegations showing that he suffered severe emotional distress. Plaintiff's alleged harm is a fear of future events, unspecified damage to "his mental and physical health and rendering his property worthless - a danger to human occupation." Doc. 36 at 27.  That allegation of harm is a legal conclusion rather than a statement of facts which demonstrates how Plaintiff's mental health has been damaged.  USPI's motion to dismiss, doc. 43, should be granted as to all claims.

## VI.    Florida Gas and Southern Union's Motion to Dismiss, doc. 44

"Defendant Florida Gas is the owner and operator of two interstate natural gas transmission pipelines that run adjacent to [Plaintiff's] property in Leon County, Florida." Doc. 44 at 1.  Florida Gas is owned by the Citrus Corporation and Defendant Southern

"is an indirect owner of Citrus Corporation." *Id.* at 2.  Defendants seek dismissal of the third amended complaint because Plaintiff has not alleged "any specific damage to his person or property." *Id.*  They contend that Plaintiff seeks $3,400,000.00 in damages for what Plaintiff "perceives to be a potential threat stemming from the location of the pipelines." *Id.*  Put another way, Defendants argue that Plaintiff seeks "damages against the Defendants for simply being in the regulated business of transporting natural gas to citizens of Florida for consumption in one fashion or another." *Id.*

Defendants also contend that Plaintiff has not alleged a viable claim for the intentional infliction of emotional distress or negligence.  *Id.* at 2-3.  They assert that "Southern Union cannot be liable under black letter Florida law for the conduct of Florida Gas." *Id.* at 3.


## VII.    Analysis

### A.  Intentional Infliction of Emotional Distress

As noted above, to state a claim for the intentional infliction of emotional distress, Plaintiff must allege extreme and outrageous conduct by the Defendants, an intent or reckless disregard to the probability of causing, emotional distress, severe emotional distress suffered by the plaintiff; and a causal connection between Defendants' conduct and Plaintiff's severe emotional distress.  R.W., 830 F.Supp.2d at 1304; *see also* Nickerson v. HSNi, LLC, No. 8:11cv538, 2011 WL 3584366, at *2 (M.D. Fla. Aug. 15, 2011).  The physical impact rule, however, is not applicable to a claim for intentional infliction of emotional distress.  Thomas v. Hospital Bd. of Dirs., 41 So.3d 246, 253 (Fla.

2d DCA 2010), *citing* Kirksey v. Jernigan, 45 So.2d 188, 189 (Fla. 1950); Rivers v.

Grimsley Oil Co., 842 So.2d 975, 976 (Fla. 2d DCA 2003) ("The impact [rule] has no

application to intentional torts because the duties created by these torts have never

been restricted to the protection of physical person and property.") (other citations

omitted).  The Florida Supreme Court "expressly recognized the tort of intentional

infliction of emotional distress under which emotional distress is recoverable even if no

physical impact is present."  R.J., 652 So.2d at 363, *citing* Eastern Airlines, Inc. v. King,

557 So.2d 574 (Fla. 1990); Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla.

1985).  For example, in Champion v. Gray, 478 So.2d 17 (Fla. 1985), the Court "held

that psychological trauma[15] and mental distress are recoverable as elements of damage

without direct physical impact in cases where a plaintiff was in the sensory perception of

physical injuries negligently imposed upon a close family member and where the plaintiff

suffered a discernible physical injury."  R.J., 652 So.2d at 363.

Here, there is no need to examine the facts about which Plaintiff complains to

determine if the Defendants' conduct was intentional, reckless, or "outrageous"

because, even if they were, accepting all factual allegations as true, Plaintiff did not

allege any facts which demonstrate that he suffered severe emotional distress.  *See*

Nickerson, 2011 WL 3584366, at *2 (holding "dismissal is proper because the

Complaint lacks factual allegations demonstrating . . . that Plaintiff's emotional suffering

---

[15] "[n] Brown v. Cadillac Motor Car Div., 468 So.2d 903, 904 (Fla. 1985), which
was issued the same day as Champion, the Florida Supreme Court held that 'such
psychological trauma must cause a demonstrable physical injury such as death,
paralysis, muscular impairment, or similar objectively discernible physical impairment.' "
Elliott, 58 So.2d at 881.

was 'severe.' ").  Plaintiff alleged that seeing the mining operations of the pipeline terrorized him and inflicted severe emotional stress on him and other residents.  Doc. 36 at 27.  Plaintiff stated only that he suffered damage "in his mental and physical health." *Id.*  Those statements are legal conclusions, however, and not statements of fact.  A complaint must do more that provide "a formulaic recitation of the elements of a cause of action . . . ."  Twombly, 127 S.Ct. at 1964-65.  Plaintiff does not allege any physical condition, symptom, or conduct which demonstrates "severe emotional distress," nor does Plaintiff allege having sought or received medical treatment for any mental health issue.  Consistent with the earlier conclusion of this claim as brought against USPI, because Plaintiff does not allege any facts which demonstrate he has suffered, or currently suffers from, severe emotional distress, this claim is insufficient as a matter of law and the motion to dismiss, doc. 44, should be granted as to this claim.

B.    **Negligence**

The final claim to be considered is Plaintiff's negligence claim (count two) against Southern and Florida Gas.  Doc. 36 at 28.  There is no need for extensive analysis on this claim for the reasons previously stated.  Plaintiff has not alleged any actual harm, loss, or damage.  Defendants point out that Plaintiff presents no allegations of "a pipeline rupture, leak, or similar incident leading through a causal chain of events to particularized property damage or personal injury."  Doc. 44 at 13.  Further, Defendants argue that Plaintiff's assertion of diminution in real property value is unsupported, and

unclear as to whether the alleged loss is temporary or permanent. *Id.* at 15. They contend that the doctrine of *damnum absque injuria*[16] precludes relief to Plaintiff. *Id.*

In response, Plaintiff contends his property harm comes from the fact that "a residential seller must disclose <u>any unsafe conditions as material facts</u> to the buyer that effects its value." Doc. 47 at 3 (emphasis in original). Plaintiff asserts that he has a legal and moral duty to disclose unsafe or hazardous conditions. *Id.* at 4. Plaintiff does not, however, allege in the third amended complaint that he has been unable to sell his property because of Defendants' conduct, nor has Plaintiff sufficiently alleged any facts which show loss of value.

Plaintiff's third amended complaint presents conclusions rather than facts. Plaintiff does not allege any compensable harm has taken place. There has been no spill, leak, rupture, or contamination, and Plaintiff's claim of diminution in value is unsupported by factual allegations. Plaintiff acknowledges that a "safely operated adjacent pipeline does mildly affect landowner values - but not enough to sue over . . . ." Doc. 47 at 10. Plaintiff has not, however, alleged any safety violations by the named Defendants. Plaintiff has not provided any facts which support his naked assertion that Defendants have failed to operate the pipeline safely. While he is concerned about mining operations operating in the vicinity, that conduct is not undertaken by any named Defendant.

---

[16] *Damnum absque injuria* is defined as "[l]oss, hurt, or harm without injury in the legal sense; that is, without such breach of duty as is redressable by a legal action. A loss or injury which does not give rise to an action for damages against the person causing it." Black's Law Dictionary 393 (6th ed.1990)

The location of the pipeline was approved by FERC, and Plaintiff may not challenge the approved location of the pipeline extension in this lawsuit.  Plaintiff's statement that Southern and Florida Gas are "mutually liable for damages created by negligently placing the pipeline across an active sand mine contrary to Pipeline safety laws and for failing to operate the old existing pipeline safely," doc. 47 at 15, demonstrates the true nature of this case.  Plaintiff's complaint is with the location, not with Defendant's actions in operating the pipeline.  Plaintiff has not alleged any specific pipeline safety law that was negligently violated by any named Defendant.  The motion to dismiss, doc. 44, filed by Florida Gas and Southern Union should be granted in its entirety.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to dismiss, doc. 43, filed by Defendant U.S. Pipeline be **GRANTED**, that the motion to dismiss, doc. 44, filed by Defendants Florida Gas Transmission Company and Southern Union Company be **GRANTED**, and the claims raised in Plaintiff's third amended complaint, doc. 36, be **DISMISSED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 4, 2014.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**